# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ERICKA SOTOJ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:14-cv-00754** |
| | ) | |
| **v.** | ) | **Judge Sharp** |
| | ) | **Magistrate Judge Holmes** |
| **NASHVILLE AQUARIUM, INC.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Nashville Aquarium, Inc.'s ("the Aquarium")

Motion for Summary Judgment. (Docket No. 48.) For the reasons stated below, the Motion will

be denied as to Plaintiff's sexual harassment claim and granted as to Plaintiff's retaliation,

gender discrimination, and pregnancy discrimination claims.

### I. BACKGROUND

#### A. Facts[1]

Plaintiff Ericka Sotoj started work preparing food at the Aquarium restaurant in

Nashville, Tennessee, on March 1, 2013. Sotoj alleges that her supervisor, Aquarium Executive

Chef Chavois Jerod Wilcher, sexually harassed her during her employment. Sotoj contends that

Wilcher retaliated against her, and eventually fired her, for refusing his advances and

complaining about this harassment. She also contends that the Aquarium discriminated against

her on the basis of her gender and pregnancy.

---

[1] Unless otherwise stated, all facts are undisputed and drawn from Defendant's Reply to Defendant's Concise
Statement of Material Facts and Response to Plaintiff's Statement of Additional Material Facts (Docket No. 65).

1. <u>Sexual Harassment</u>

On March 9, 2013, around 8:15 or 8:30 am, Sotoj went to Wilcher's office to retrieve an apron and towels. Wilcher complained that he was "stressed," and Sotoj offered him Tylenol and a glass of water. While speaking to Wilcher, Sotoj mentioned that she has children. Wilcher told her that she was "very pretty" and "he couldn't tell that [she] had kids." Thereafter, Sotoj alleges that Wilcher approached her as if reaching for something on a shelf behind her, but instead "he embraced [her] and tried to kiss [her]." (Docket No. 49-1, p. 15.) Sotoj believed that Wilcher was trying to kiss her because he approached her in an usual manner, and because his face was very close to hers. (<u>Id.</u> at 17–19.) Sotoj alleges that she pushed Wilcher away while asking Wilcher why he did that, and Wilcher responded by asking "if [she] liked him." (<u>Id.</u> at 17.) After this encounter, Sotoj left Wilcher's office. Later that morning, Wilcher allegedly got "really close" to Sotoj and asked her "are you afraid of me." (<u>Id.</u> at 22.)

Around 9:30 am the same day, Sotoj went to the employee break room to call her husband regarding their son. When Sotoj turned around at the end of the call, she discovered that Wilcher had entered the break room. Sotoj alleges that Wilcher got "very close" and touched her in a manner that led her to believe he was trying to kiss her, so she pushed him away with enough force to make him "back off." Wilcher denies attempting to kiss Sotoj on either occasion.

On May 12, 2013, Sotoj was assigned to cut vegetables in a "tight" section of the kitchen. Sotoj alleges that Wilcher passed by her holding a tray twice that day: the first time he rubbed the outside of his hands against her chest, and the second time against her buttocks. (Docket No. 49-1, p. 37.) Sotoj was offended. In her brief, Sotoj claims that she reported this incident to

2

human resources, but she has not cited any evidence in the record to support this contention. (See Docket No. 65, p. 24.)

### 2. Retaliation and Human Resources Investigation

Sotoj contends that Wilcher retaliated against her after she refused his advances. According to Sotoj, Wilcher was constantly harassing her about working faster, to the point that other employees noticed, but he did not do this to anyone else. (Docket No. 49-1, pp. 58–59, 63–64.) Sotoj also contends that Wilcher unfairly criticized her work. Sotoj claims that Wilcher once required her to work later than other employees, and that he reduced her hours. The Aquarium contends that another kitchen manager also talked to Sotoj and other employees about the need to speed up their work. The Aquarium also contends that another manager was responsible for employee scheduling towards the end of Sotoj's employment. Sotoj also had another job that impacted her ability to work at the Aquarium, though she told Wilcher that she was willing to quit her second job to work more hours at the Aquarium. (See id. at 10.)

The Aquarium has an "Unlawful Harassment" policy, and Sotoj received a copy of the policy when she started at the Aquarium. Under the policy, employees may report harassment to the human resources department or to a supervisor. (Docket No. 49-6, p. 2.) In April, Sotoj called the human resources department and reported that Wilcher attempted to kiss her, then retaliated against her for refusing his advances by harassing her about the speed of her work and giving more hours to other people instead of her when "the work load was really low." (Docket No. 49-1, p. 42.) A few days later, Sotoj spoke to an Aquarium manager, Ingrid Diaz, to report that Wilcher constantly told her to speed up her work and tried to kiss her. Diaz and Sotoj reported the harassment to Aquarium General Manager Bill Dubuc. Diaz and Dubuc later told Sotoj that there was no evidence to support her harassment claim, her "work was very slow," and

3

she was "not performing the way [she] should be. And that was the reason they were reducing [her] time." (Id. at 45.)

The Aquarium contends that Wilcher was disciplined following an investigation of Sotoj's complaint: he received a written notice for "unprofessional behavior" on June 3, 2013, and he was required to attend an online sexual harassment training course. (See Docket No. 49-3.) Although Sotoj claims that these actions were taken in response to another employee's sexual harassment complaint, she cites no evidence to support this claim. (See Docket No. 62, p. 23.)

### 3. Termination

On May 24, 2013, a kitchen manager assigned Sotoj to prepare shrimp. This task involved going into the freezer for up to five minutes to retrieve supplies. Sotoj sneezed and had watery eyes when she was in the freezer or when the freezer door was left open, and she believes that she has an allergy to the cold. According to the Aquarium, Sotoj told Wilcher that she had an allergy to the cold that prevented her from doing this work. She also stated that nobody liked to prepare the shrimp. Wilcher told Sotoj that she had to go home if she was not willing to prepare the shrimp because that was the work that needed to be done. Sotoj clocked out and left the restaurant; Wilcher considered this job abandonment.

Sotoj claims that she was concerned about working near the freezer because of her allergy and because she was pregnant. In her briefs, Sotoj asserts that she told Wilcher that the freezer was a medical risk to her pregnancy (Docket No. 62, p. 25); however, the only evidence in the record indicates she did not tell Wilcher that she was pregnant or that her refusal to prepare shrimp was related to her pregnancy (Docket No. 65, pp. 30, 31, 34). Sotoj believes that Wilcher knew she was pregnant because every day at work "everyone would touch [her] belly" and ask

4

how she was doing with her pregnancy.  (Docket No. 49-1, p. 53.)  After her termination, Sotoj's doctor provided a note stating that "it is advised for her not to go into the cooler/freezer area during her pregnancy."  The doctor testified that he wrote the note because working near the freezer caused Sotoj stress, not because it was medically necessary for her to avoid the freezer.  (Docket No. 49-5, p. 11.)

After she left the restaurant, Sotoj called the corporate office's human resources department.  (Docket No. 49-1, p. 54.)  Sotoj was allegedly told to return to work the next day and that there would be an investigation.  (Docket No. 62, p. 5.)  However, when she returned to work, Wilcher and another kitchen manager told her that she was fired.  She later received a call from human resources stating that she was terminated for job abandonment.

### B.  Procedural Background

Sotoj sued the Aquarium for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), on March 17, 2014.  (Docket No. 1.)  The Aquarium filed its Motion for Summary Judgment on July 1, 2015 (Docket No. 48), along with a Memorandum in Support (Docket No. 50), a Concise Statement of Material Facts for which Defendant Contends there is no Genuine Issue for Trial (Docket No. 49), and six exhibits (Docket Nos. 49-1–49-6).  On August 5, 2015, Sotoj filed her Response to Defendant's Concise Statement of Material Facts and Plaintiff's Statement of Additional Material Facts (Docket No. 57), a Response in Opposition to Defendant's Motion (Docket Nos. 56, 62), and thirteen exhibits (Docket Nos. 59, 63).  The Aquarium filed a Reply brief on August 26, 2015 (Docket No. 64), along with its Reply to Defendant's Concise Statement of Material Facts and Response to Plaintiff's Statement of Additional Material Facts (Docket No. 65) and two exhibits (Docket Nos. 65-1–65-2).

5

## II. STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a moving party without the burden of proof at trial seeks summary judgment, the movant "bears the initial burden of showing that there is no material issue in dispute." Lindsay v. Yates, 578 F.3d 407, 414 (6th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Blizzard, 698 F.3d at 282 (internal citations and quotations omitted).

A movant with the burden of proof, however, must present evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted). The movant "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002) (citation omitted). Summary judgment in favor of the party

6

with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

## III. ANALYSIS

### A. Sexual Harassment

Under Title VII, employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). A hostile work environment discrimination plaintiff must establish that: "(1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, . . . (4) the harassment affected a term, condition, or privilege of employment, and" (5) the employer bears responsibility for the harassment. Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 600 (6th Cir. 2007) (quoting Farmer v. Cleveland Pub. Power, 295 F.3d 593, 605 (6th Cir. 2002)); Mast v. IMCO Recycling of Ohio, Inc., 58 F. App'x 116, 119 (6th Cir. 2003). Sotoj is a member of a protected class because of her sex. 42 U.S.C. § 2000e-2(a)(1). The Aquarium contends that Sotoj has not presented evidence of the remaining elements.

#### 1. Unwelcome Harassment

First, the Aquarium contends that Sotoj has not presented evidence that any harassment she may have suffered was unwelcome. (Docket No. 50, p. 9.) "To determine whether a co-worker's sexual advances or requests are unwelcome, [the Court] focus[es] on the plaintiff's 'words, deeds, and deportment.'" Souther v. Posen Const., Inc., 523 F. App'x 352, 355 (6th Cir. 2013) (quoting Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1011 (7th Cir. 1994)). A plaintiff meets this element by presenting evidence that she "indicated by her

7

conduct" that the harassment was unwelcome. Wisniewski v. Pontiac Sch. Dist., 862 F. Supp. 2d 586, 597 (E.D. Mich. 2012); accord Souther, 523 F. App'x at 355. For instance, the plaintiff in Jaquez v. Herbert, 447 F. Supp. 2d 858, 868 (N.D. Ohio 2006), did not present evidence that the harassment was unwelcome where she did not "resist[] or reject[] [her harasser's] advances" and the defendant showed that the plaintiff "solicited or invited at least some of [the harasser's] advances, once driving to the plant to pick him up so they could go to a motel." On the other hand, in Bradford v. Department of Community Based Services, No. CIV.A. 09-206-DLB, 2012 WL 360032, at *7 (E.D. Ky. Feb. 2, 2012), the plaintiff presented evidence that her harasser's conduct was unwelcome by showing that she told the harasser "you shouldn't do that" and complained about the harasser to her supervisor.

Sotoj presented evidence that she pushed Wilcher away after both of his attempts to kiss her. Furthermore, Sotoj complained about Wilcher's attempts to kiss her to the corporate human resources department and to her manager. Sotoj objected to Wilcher's attempts to kiss her with her words and deeds, thus she has presented evidence that the harassment was unwelcome. See Souther, 523 F. App'x at 355.

2. Based on Sex

The Aquarium also argues that Sotoj has not presented evidence that Wilcher harassed her based on sex. Specifically, the Aquarium argues that Sotoj "failed to present sufficient evidence to allow a trier of fact to conclude that Wilcher engaged in the allegedly harassing behavior of attempting to kiss Plaintiff twice" because "Wilcher denies that he tried to kiss Plaintiff, and Plaintiff has no evidence to refute that denial. Indeed, Plaintiff admits that Wilcher's mouth never touched her face, and admits that she does not know whether Wilcher was actually trying to kiss her." (Docket No. 50, pp. 9–10.) The Aquarium's argument ignores

8

Sotoj's contrary deposition testimony in which she explained that she believed Wilcher was trying to kiss her because of the unusual manner in which he approached her and brought his face very close to hers, and because of the comments he made at the time, including that he found her "very pretty," he "couldn't tell that [she] had kids," and he asked "if [she] liked him." (Docket No. 49-1, pp. 14–15, 17–19, 25–26.) On a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves, 530 U.S. at 150. Sotoj has created a genuine dispute of material fact as to whether Wilcher tried to kiss her.

A plaintiff establishes harassment "based on her sex" by presenting evidence that "but for the fact of her sex, she would not have been the object of harassment." Williams v. Gen. Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999) (citation omitted). This inference is "easy to draw" where the harassment includes "explicit or implicit proposals of sexual activity" because the harassment is presumably motivated by sexual desire, and therefore based on sex. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (holding this method of proving harassment because of sex is available to same-sex and opposite-sex harassment plaintiffs); see generally David S. Schwartz, When Is Sex Because of Sex? The Causation Problem in Sexual Harassment Law, 150 U. Pa. L. Rev. 1697, 1703 (2002) (describing the "sex per se rule" as an "evidentiary shortcut[] relieving plaintiffs of the burden of proving the harasser's motivation in targeting the plaintiff" where the harassment involves sexual conduct). For instance, in Dick v. Phone Directories Co., 397 F.3d 1256, 1266 (10th Cir. 2005), where the plaintiff alleged that her harasser "rubbed [her] crotch," the court found that the plaintiff presented evidence that the harassment was based on sex because the harasser touched "one of the most intimate parts of [plaintiff's] body—an act seldom carried out without some sort of sexual motivation."

9

Sotoj testified that Wilcher made comments about her appearance before trying to kiss her, an act that is often sexual in nature. See, e.g., Satterfield v. Karnes, 736 F. Supp. 2d 1138, 1160 (S.D. Ohio 2010) (assuming harassment based on sex where harasser "grabbed [plaintiff's] breast and reached for her crotch on one occasion" then later "forcibly kissed her"). Furthermore, Sotoj alleges that Wilcher intentionally rubbed against her chest and buttocks while walking by her in the kitchen, and these body parts are typically touched only with a "sexual motivation." Dick, 397 F.3d at 1266. Sotoj has created a genuine dispute of material fact as to whether the harassment was based on sex.

3. Hostile Work Environment

Workplace harassment is actionable under Title VII if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Clark v. United Parcel Serv., Inc., 400 F.3d 341, 351 (6th Cir. 2005) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Courts do not "examine each alleged incident of harassment in a vacuum," but instead consider whether, under the totality of the circumstances, the alleged harassment was objectively "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive" and whether the victim "subjectively regard[ed] that environment as abusive." Jackson v. Quanex Corp., 191 F.3d 647, 661, 658 (6th Cir. 1999) (quoting Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997)). Whether the alleged harassment is sufficiently severe and pervasive is a question of fact, and "[s]ummary judgment is appropriate only if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 333 (6th Cir. 2008). Sotoj contends that the three incidents of harassment she alleges—Wilcher's two attempts to kiss her and the occasion on which

10

Wilcher rubbed against her while holding a tray—suffice to create a genuine dispute of material fact as to whether Wilcher's harassment was sufficiently severe to alter the terms or conditions of her employment. (Docket No. 62, p. 12; see Docket No. 65, p. 2.) The Aquarium contends that it is entitled to summary judgment because the work environment was not hostile or abusive under the subjective or objective standard. (Docket No. 50, pp. 11–14.)

"[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris, 510 U.S. at 21–22. The Aquarium contends that Sotoj did not view her work environment as abusive because (1) the alleged harassment was infrequent, (2) Sotoj stated that she was not afraid of Wilcher, and (3) Sotoj did not immediately report the harassment. (Docket No. 50, pp. 13–14.) However, a plaintiff need not feel "physically threatened" to establish a subjective belief that her work environment was hostile or abusive, and she need not report the harassment; instead, she "need only show that the harassment made it more difficult to do the job." Williams, 187 F.3d at 567 (quoting Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988)); accord Newman v. Fed. Exp. Corp., 266 F.3d 401, 406 (6th Cir. 2001) (plaintiff failed to establish he subjectively perceived work environment to be hostile where he was "not surprised, shocked or disturbed" by harassment). In this case, Sotoj testified that she pushed Wilcher away after both alleged kiss attempts; she was offended by the incident in which he rubbed against her while carrying a tray; and she complained to her manager and the human resources department about Wilcher's behavior and the fact that she believed he was retaliating against her for refusing his advances by criticizing her work without justification. (Docket No. 65, pp. 20–22.) A jury could reasonably determine that Sotoj believed Wilcher's harassment

11

made it more difficult to do her job, and therefore that she subjectively found her work environment abusive.  See Williams, 187 F.3d at 567.

In considering whether the harassment was objectively severe or pervasive enough to alter the terms and conditions of employment and thereby create a hostile work environment, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Hawkins, 517 F.3d at 333 (quoting Jordan v. City of Cleveland, 464 F.3d 584, 597 (6th Cir. 2006)).  The Aquarium contends that Sotoj's claim must be dismissed because the Sixth Circuit has rejected harassment claims where the conduct alleged was less severe than Wilcher's.  (Docket No. 50, p. 11.) However, the Court finds that Sotoj presents enough evidence to create a genuine dispute of material fact as to whether she meets the objective prong of the test.

Sotoj points to three incidents of harassment over her approximately three months of employment.  The alleged harassment was therefore infrequent.  See, e.g., Hensman v. City of Riverview, 316 F. App'x 412, 417 (6th Cir. 2009) (harassment infrequent where in six weeks, harasser hugged plaintiff three times, grabbed her arm once, and called her voluptuous twice); Valentine-Johnson v. Roche, 386 F.3d 800, 814 (6th Cir. 2004) (finding harassment infrequent where plaintiff complained of three incidents in about two months); Primm v. Auction Broad. Co., No. 3:10-cv-0629, 2012 WL 13930, at *6 (M.D. Tenn. Jan. 4, 2012) (finding that "a handful of" offensive statements occurring over a "few months" was not frequent).  However, "though the frequency of the conduct is a relevant factor, it is not dispositive."  Ault v. Oberlin Coll., 620 F. App'x 395, 402 (6th Cir. 2015).

12

A Title VII plaintiff is not obligated to establish pervasive harassment to make out a claim; egregious isolated acts of harassment may be severe enough to state a claim for hostile work environment discrimination.  Id.  "[H]arassment involving an 'element of physical invasion' is more severe than harassing comments alone," and a single act, or a few acts, of harassment involving physical invasion may be sufficiently severe to create an objectively hostile workplace.  Hawkins, 517 F.3d at 334.  Harassment involving physical contact is not severe per se; as with all forms of workplace harassment, courts consider the totality of the circumstances—including the duration of the contact, where on the body the contact occurred, the relative invasiveness of the contact, and the context—to determine whether the alleged conduct was objectively severe enough that a reasonable person in the plaintiff's situation would find the workplace hostile or abusive.  Williams, 187 F.3d at 563–64.

For example, in the court in Burnett v. Tyco Corp., 203 F.3d 980, 984 (6th Cir. 2000), found a single incident of physical contact and two lewd remarks over the course of six months insufficient to create an objectively hostile work environment.  The plaintiff alleged that her harasser placed a pack of cigarettes inside her tank top and brassiere strap, and although the court noted that the incident was fairly severe because it involved an element of physical invasion, the court found that the work environment was not objectively hostile because the physical contact was limited:  the harasser apparently "pulled the [plaintiff's bra] strap up just enough to insert the cigarette pack."  Id. at 981.  In Ault, 620 F. App'x at 403, on the other hand, the court found a single incident of harassment could suffice to create a hostile work environment.  The Ault plaintiff alleged that her assailant approached her from behind, pressed his body into hers so that she could feel his penis, and refused to move so that she could not escape.  Unlike the harassment in Burnett, the incident in Ault was threatening, and the Ault harassment was

significantly more invasive.  Id.  Because the physical invasion was sustained, physically restraining, and violated the plaintiff's bodily integrity, the court found this single incident was sufficiently severe to create a genuine dispute of material fact as to whether the work environment was objectively hostile.  Id.; see also Lyons v. Vanderbilt Univ., No. 3:14-CV-1906, 2015 WL 8668235, at *5 (M.D. Tenn. Dec. 11, 2015) (finding objectively hostile environment where harasser acted while "confined in a small space" with plaintiff and rubbed her breasts against his back, violating his bodily integrity).

Two or more less egregious incidents involving physical contact may also suffice to establish an objectively hostile work environment if the incidents are sufficiently invasive and severe under the totality of the circumstances.  In Bowman v. Shawnee State University, 220 F.3d 456, 458 (6th Cir. 2000), the plaintiff failed to establish an objectively hostile work environment where his harasser allegedly rubbed his shoulder for one to two seconds; grabbed his buttocks at a party; became angry and "put her finger on [his] chest, placed her hands upon him, and pushed him towards the door;" and made a few lewd remarks.  Although the plaintiff alleged three incidents of physical contact, the shoulder rub and the chest push were relatively non-invasive and only "arguably" based on sex, and the incidents took place over the course of more than three years.  Id. at 464.  By contrast, the court in Balding-Margolis v. Cleveland Arcade, 352 F. App'x 35, 43 (6th Cir. 2009), found a plaintiff's allegations that, over the course of about a year and a half, her supervisor made a series of lewd remarks, hit her once on the buttocks, and once untied her apron "which was tied at the back" were "sufficient to raise a question of fact as to whether she experienced a hostile work environment," because "[t]he most invasive conduct included physical touching on at least two occasions."

14

In this case, Sotoj alleges three incidents of harassment involving an element of physical invasion in about three months. As discussed above, and unlike the incidents alleged in Bowman, Sotoj has presented evidence that all three incidents were because of sex. Like the harassment in Ault and Lyons, two of the incidents took place in close quarters: the first time Wilcher attempted to kiss Sotoj, they were in his small office, and Wilcher brushed his hands against Sotoj's breasts and buttocks while she was working in a "tight" part of the kitchen. Wilcher's harassment included an additional element of intimidation—between his attempts to kiss Sotoj, he asked her if she was afraid of him. Wilcher's actions were less invasive than those of the harasser in Ault, who pressed his groin into the plaintiff's back, and Lyons, who pushed her breasts into the plaintiff's back; however, Wilcher's harassment was more invasive than the harassment in Burnett, where the harasser lifted up the plaintiff's bra strap, and as invasive as the harassment in Balding-Margolis, where the harasser hit the plaintiff's buttocks and untied her apron. "Whether conduct is severe or pervasive is quintessentially a question of fact," Jordan, 464 F.3d at 584 (citation and internal quotation marks omitted), and "[s]ummary judgment is appropriate only if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." Hawkins, 517 F.3d at 333. A fact finder could reasonably conclude Wilcher's conduct was severe enough to create a hostile work environment, thus summary judgement is inappropriate.

The Aquarium primarily relies on three Sixth Circuit opinions in which it contends the court "has expressly rejected sexual harassment claims where the alleged conduct was far more egregious than that which is alleged in this case" (Docket No. 50, p. 11), but the Court finds that these cases are distinguishable. For instance, in Clark, 400 F.3d at 351, the plaintiff's harasser "twice placed his vibrating pager on her thigh as he passed her in the hall, and most significantly,

he pulled at her overalls after she told him she was wearing a thong."  However, the <u>Clark</u>

plaintiff alleged only "three relatively isolated incidents over a period of approximately two and

a half years."  <u>Id.</u>  In this case, Sotoj alleges three incidents over a period of less than three

months, and unlike in <u>Clark</u>, all of the incidents alleged by Sotoj involve Wilcher touching Sotoj

in a sexual manner.  In <u>Stacy v. Shoney's, Inc.</u>, No. 97-5393, 1998 WL 165139, at *1 (6th Cir.

Mar. 31, 1998), the plaintiff alleged that her harasser leered at her, made inappropriate remarks,

and "inappropriately touched her breast when he removed and replaced an ink pen from her front

shirt pocket."  Sotoj, on the other hand, alleges three such physical invasions.  Finally, although

the plaintiff in <u>Hensman</u>, 316 F. App'x at 417, alleged that her harasser hugged her three times

and grabbed her arm once, in addition to other non-physical conduct, the court found this

conduct did not rise to the level of "physically threatening or humiliating" because the harasser

"never propositioned [plaintiff] or grabbed her sexually."  Unlike in <u>Hensman</u>, Sotoj alleges that

all of Wilcher's conduct was sexual—he twice attempted to kiss her and touched her breasts and

buttocks.

Sotoj alleges three incidents of harassment that all involve an element of physical

invasion or humiliation.  The allegations are "more than 'genuine but innocuous differences in

the ways men and women routinely interact.'"  <u>Williams</u>, 187 F.3d at 564 (citation omitted).  The

Court finds that Sotoj has demonstrated a genuine dispute of material fact as to whether the

harassment was objectively severe enough to alter the terms and conditions of her employment

and create a hostile work environment.

### 4.  <u>Employer Responsibility and Affirmative Defense</u>

"An employer is subject to vicarious liability to a victimized employee for an actionable

hostile environment created by a supervisor with immediate (or successively higher) authority

16

over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); see also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) (companion case).  The parties agree that Wilcher was Sotoj's supervisor, thus the Aquarium is vicariously liable for his actions.  Burlington, 524 U.S. at 765.  (See Docket Nos. 50, p. 8; 62, pp. 22–25.)  The Aquarium contends that the alleged harassment did not culminate in a tangible employment action and that it has satisfied the affirmative defense.  (Docket No. 50, pp. 14–15.)  Sotoj contends that the hostile work environment created by Wilcher and her allegedly-retaliatory termination constitute adverse employment actions, thus the affirmative defense is inapplicable. (Docket No. 62, pp. 24–25.)

The affirmative defense only applies when a plaintiff alleges "an actionable hostile environment created by a supervisor," thus the allegedly-hostile work environment itself cannot constitute a tangible employment action under this standard.  Ellerth, 524 U.S. at 765.  After all, "[i]f a hostile work environment alone could constitute a 'tangible employment action,' no employer would be able to invoke the Faragher/Ellerth affirmative defense in a situation where a hostile work environment existed.  But the affirmative defense is designed for precisely such a situation."  Finnerty v. William H. Sadlier, Inc., 176 F. App'x 158, 161 (2d Cir. 2006). Furthermore, even though termination is a tangible employment action, "[t]angible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense."  Lissau v. S. Food Serv., Inc., 159 F.3d 177, 182 (4th Cir. 1998); see Balding-Margolis, 352 F. App'x at 44 (plaintiff's claim that she was fired in retaliation for complaining about sexual harassment dismissed on summary judgment, court did not consider whether she suffered an adverse employment action).  As described below, Sotoj's retaliatory discharge claim fails because she

17

does not present evidence that the Aquarium's proffered reasons for reducing her hours and terminating her employment were a pretext for unlawful discrimination. Accordingly, the Court considers whether the affirmative defense applies.

The affirmative defense to liability for hostile work environment harassment "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. The Aquarium argues that it took reasonable care to prevent sexual harassment by implementing an anti-harassment policy, it took prompt action in response to Sotoj's complaints, and Sotoj unreasonably failed to take advantage of the Aquarium's sexual harassment reporting mechanism. (Docket No. 50, pp. 14–15.)

First, an employer exercises "reasonable care to prevent" sexual harassment when it promulgates an anti-harassment policy. Ellerth, 524 U.S. at 765; Collette v. Stein-Mart, Inc., 126 F. App'x 678, 685 (6th Cir. 2005) ("giving employees written notice of such policies and how they are enforced constitutes an adequate general preventive measure"). "[A]n effective [harassment] policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." Thornton v. Fed. Express Corp., 530 F.3d 451, 456 (6th Cir. 2008) (quoting Clark, 400 F.3d at 349–50). The Aquarium presents undisputed evidence that it had such a policy in place. Under the policy: "[e]mployees who witness or feel that they are experiencing harassment . . . should immediately report the problem;" "[a]ll supervisors and managers have the responsibility to eliminate all harassing behavior. This

18

responsibility includes communicating and enforcing this policy;" employees are not required to discuss harassment with their supervisors; and employees have multiple avenues for reporting harassment. (Docket No. 49-6.) Sotoj received a copy of the policy. Sotoj does not argue that the "Unlawful Harassment" policy is not an effective harassment policy. (Docket No. 62, p. 23.)

However, to meet the first prong of the affirmative defense, the employer must also show that it enforced its policy by promptly taking steps reasonably calculated to end the harassment. Collette, 126 F. App'x at 685; Clark, 400 F.3d at 350 (policy must be "effective in practice"); see E.E.O.C. v. Harbert-Yeargin, Inc., 266 F.3d 498, 510 (6th Cir. 2001). "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." Collette, 126 F. App'x at 686 (quoting Swenson v. Potter, 271 F.3d 1184, 1193 (9th Cir. 2001)); compare Smith v. Rock-Tenn Servs., Inc., 813 F.3d 298, 312 (6th Cir. 2016) ("a reasonable jury could have concluded that Defendant's total inaction for ten days . . . was unreasonable"), with Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 474–75 (6th Cir. 2012) (response was reasonably prompt where investigation commenced within a week of receiving notice of complaint, investigation involved interviewing every employee in the store, and disciplinary warning issued less than one month after complaint). Prompt investigation of employee complaints is critical because the primary objective of Title VII is "not to provide redress but to avoid harm," Faragher, 524 U.S. at 806, and by promptly investigating, the employer avoids future harm by putting "all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace." Collette, 126 F. App'x at 686 (citation omitted). Additionally, an employer takes steps reasonably calculated to end harassment when it disciplines the perpetrator. Harbert-Yeargin, Inc., 266 F.3d at 511. If the steps taken by the employer do not result in an end to the

19

harassment, the employer's actions may not be "reasonably calculated to end [the] harassing behavior." Id.; see, e.g., Wathen v. Gen. Elec. Co., 115 F.3d 400, 407 (6th Cir. 1997) (finding employer's response adequate where it "put an end to the behavior of which [plaintiff] complained").

The Aquarium contends that it took reasonable care to correct Wilcher's harassing behavior because it investigated Sotoj's complaints by questioning Wilcher, found that Sotoj's complaint could not be substantiated, but issued Wilcher a written warning and required him to watch a sexual harassment training video. (Docket No. 50, p. 15.) However, the Aquarium has not presented evidence that its response to Sotoj's complaints was prompt. The record indicates that Sotoj lodged her first complaint sometime in April, Wilcher was interviewed sometime in May (see Docket No. 49-2, p. 19), and his written reprimand was not issued until June 3 (Docket No. 49-3, p. 2), after Sotoj was terminated. Moreover, beyond interviewing Wilcher, the Aquarium has not presented evidence that it took any steps to investigate Sotoj's complaint that might explain the delay. Finally, Sotoj alleges that Wilcher's harassment continued after she complained. Reviewing the facts in the light most favorable to Sotoj as the nonmoving party, the Aquarium has not established that it promptly responded to Sotoj's complaint in a manner reasonably calculated to end the alleged harassment. See Smith, 813 F.3d at 312.

To establish its entitlement to the affirmative defense, the defendant must also show that the plaintiff unreasonably failed to take advantage of defendant's preventive or corrective opportunities to avoid harm. Ellerth, 524 U.S. at 765; Harbert-Yeargin, Inc., 266 F.3d at 511. The Aquarium contends that Sotoj's delay in reporting Wilcher's behavior constitutes such a failure. (Docket No. 50, p. 15.) However, the Court finds a genuine dispute of material fact exists as to whether Sotoj's delay was unreasonable. Reasonableness is a question of fact, and a

20

delay in reporting harassment does not always constitute an unreasonable failure to take advantage of corrective opportunities to avoid harm.  For instance, in Thornton, 530 F.3d at 457, the plaintiff endured sexual harassment for two years, followed by two months of pressure to have sex with her supervisor, then took a two month leave of absence all before reporting the harassment; the court found that this was an unreasonable delay.  On the other hand, the court in Perry v. AutoZoners, LLC, 954 F. Supp. 2d 599, 611 (W.D. Ky. 2013), determined that a jury could find a three-week delay in reporting sexual harassment was reasonable.  See also Harbert-Yeargin, Inc., 266 F.3d at 511 (plaintiff did not unreasonably fail to utilize corrective opportunities where plaintiff did not report first instance of workplace sexual assault because "a reasonable jury could have concluded that [plaintiff] had rational grounds to refrain from reporting this incident because he was new to the company, had no witnesses, and the harasser was his supervisor").  In this case, the parties agree that Sotoj reported Wilcher's attempts to kiss her to a manager and to the human resources department, consistent with the Aquarium's policy, and neither party has established how much time elapsed between Wilcher's attempts to kiss Sotoj on March 9 and her complaints in April.

As the moving party on summary judgment and the party with the burden of proof at trial on this affirmative defense, the Aquarium "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  Arnett, 281 F.3d at 561.  The Aquarium has not met this burden.  Accordingly, the Aquarium's motion for summary judgment as to Sotoj's sexual harassment claim is **DENIED**.

*B. Retaliation*

Title VII's anti-retaliation provision prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this [Act]." 42 U.S.C. § 2000e-3(a). Sotoj opposed sexual harassment by reporting Wilcher's behavior to an Aquarium manager and human resources. See E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1067 (6th Cir. 2015) (opposition includes "complaints to management") (citation omitted). She contends that Wilcher reduced her hours, unfairly criticized her work, made her work late once, and terminated her employment in retaliation for those complaints. (Docket Nos. 62, pp. 25–26; 65, p. 24.)

Plaintiffs may prove retaliation with direct or circumstantial evidence. Imwalle v. Reliance Med. Prods, Inc., 515 F.3d 531, 544 (6th Cir. 2008). Sotoj presents no direct evidence of retaliation and relies on circumstantial evidence alone. (Docket No. 62, p. 25.) Claims based on circumstantial evidence are analyzed under the McDonnell Douglas burden-shifting framework. Imwalle, 515 F.3d at 544. First, the plaintiff must establish a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) her activity was known to the defendant, (3) the defendant took materially adverse action against the Plaintiff, and (4) the protected activity was the cause of the adverse action. Id. If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, non-retaliatory reason for its actions against the plaintiff. Id. If the defendant meets this burden, the plaintiff must show that "the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." Id.

The Aquarium contends that most of the allegedly-retaliatory acts were not materially adverse, Sotoj cannot prove that her complaints were the cause of any adverse action she

22

suffered, and Sotoj presented no evidence of pretext.  (Docket No. 50, pp. 15–22.)  Retaliatory

actions are cognizable under Title VII only if they are "materially adverse," or when the actions

would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (internal quotations omitted).

"[P]etty slights, minor annoyances, and simple lack of good manners will not create such

deterrence."  Id.  Nor will reprimands, lowered performance evaluations, or changed job

responsibilities unless they "significantly impact an employee's wages or professional

advancement."  Lahar v. Oakland Cnty., 304 F. App'x 354, 357 (6th Cir. 2008) (citation

omitted); accord Blizzard, 698 F.3d at 290.  Sotoj's allegations that Wilcher unfairly criticized

her work and made her work late once do not constitute adverse employment actions because she

presented no evidence that these acts impacted her wages or advancement.  See Blizzard, 698

F.3d at 290.  The reduction in hours and termination, on the other hand, are adverse actions

because they impacted her wages and could dissuade a reasonable worker from reporting

discrimination.  See Burlington, 548 U.S at 62 (termination is an adverse employment action);

Halfacre v. Home Depot, U.S.A., Inc., 221 F. App'x 424, 433 (6th Cir. 2007) (plaintiff may

show an action is materially adverse by presenting evidence of a negative impact on his wages).

Assuming that Sotoj meets the other elements of a prima facie case of retaliation,

however, her claim fails because the Aquarium presented legitimate, non-discriminatory reasons

for both adverse actions, and Sotoj presented no evidence of pretext.  The Aquarium contends

that an employee's speed and the needs of the business impact employee hours, hours are

reduced when business slows, and Sotoj had a second job that limited her availability.  (Docket

No. 50, p. 20.)  "Poor job performance . . . is a perfectly legitimate, legal reason" for taking an

adverse employment action.  Jones v. Potter, 488 F.3d 397, 409 (6th Cir. 2007).  Furthermore,

reduced business needs are a legitimate reason to reduce an employee's hours.  Arnold v.

Cincinnati Sportservice, Inc., No. 1:12-cv-460, 2013 WL 3761071, at *12 (S.D. Ohio July 16,

2013).  The Aquarium has therefore presented legitimate, non-discriminatory reasons for

reducing Sotoj's hours.  The Aquarium contends that Sotoj was terminated for insubordination

and job abandonment after she refused to perform her assigned task—preparing shrimp—then

clocked out and left the restaurant.  (Id. at 15.)  "[I]nsubordination and job abandonment" are

legitimate, non-discriminatory reasons for termination, thus the Aquarium has met its burden as

to this element.  Mynatt v. Morrison Mgt. Specialist, Inc., No. 3:12-CV-303, 2014 WL 619601,

at *14 (E.D. Tenn. Feb. 18, 2014).

A plaintiff can show that a defendant's reasons are pretextual by presenting evidence

"that (1) the employer's stated reason for [taking adverse action against] the employee has no

basis in fact, (2) the reason offered for [taking adverse action against] the employee was not the

actual reason for the [adverse action], or (3) the reason offered was insufficient to explain the

employer's action."  Imwalle, 515 F.3d at 545 (citing Manzer v. Diamond Shamrock Chems.

Co., 29 F.3d 1078, 1084 (6th Cir.1994)).  "[T]o survive summary judgment a plaintiff need only

produce enough evidence to support a prima facie case and to rebut, but not to disprove, the

defendant's proffered rationale."  Griffin v. Finkbeiner, 689 F.3d 584, 593 (6th Cir. 2012)

(quotation omitted).  Sotoj admits that the Aquarium's explanations are based in fact, and she

presents no comparator evidence or other evidence that the Aquarium's explanations were

insufficient to justify her reduced hours and termination.  Her sole argument rebutting the

Aquarium's proffered rationale for reducing her hours and terminating her employment relates to

the reasons she refused to prepare the shrimp.  (See Docket No. 62, pp. 25–26.)

24

To show that the employer's proffered reason was not the actual reason for the adverse action, the plaintiff typically "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal, but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003) (internal quotations omitted) (quoting Manzer, 29 F.3d at 1084). For instance, in Johnson, 319 F.3d at 868, an African-American store manager alleging that he was terminated because of his race presented pretext evidence by showing that his supervisor refused to train him, even though he trained Caucasian employees for the same position; the supervisor expressed concern that having an African-American manager would adversely impact business; and the supervisor knew other store employees made racist jokes.

In her brief, Sotoj states that "Plaintiff communicated to Mr. Wilcher that she had an allergy and the freezer was a medical risk to her pregnancy as medically indicated by her physician." (Docket No. 62, p. 25.) However, as noted in Section I.A above, Sotoj testified at her deposition that she never told Wilcher that exposure to the freezer was a medical risk to her pregnancy; she only told him that she was allergic to the cold. In any case, this fact is neither evidence that the illegal motivation at issue—retaliation for Sotoj's complaints about sexual harassment—was Wilcher's true motivation for reducing her hours or firing her, nor does it establish that Wilcher had any motive for these adverse actions beyond the non-discriminatory reasons proffered by the Aquarium. Because Sotoj presents no evidence of pretext to rebut the Aquarium's rationale for reducing her hours and terminating her employment, the Aquarium's motion for summary judgment as to this claim is **GRANTED**.

25

*C. Gender and Pregnancy Discrimination Claims*

In her Complaint, Sotoj alleges that she was discriminated against on the basis of her gender and pregnancy. (Docket No. 1, p. 3.) The Aquarium moves for summary judgment on these claims, contending that Sotoj has not made out a prima facie case of gender or pregnancy discrimination and that she has presented no evidence of pretext. (Docket No. 50, pp. 22–23.) In her Response brief, Sotoj made no legal argument regarding these claims. (See Docket No. 62, pp. 5–27.) However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." Stough v. Mayville Cmty. Schs., 138 F.3d 612, 614 (6th Cir. 1998) (citation omitted).

Finding no other apparent basis for the gender and pregnancy discrimination claims, the Court agrees that Sotoj's claims "seem to be premised on Plaintiff's assignment to prepare shrimp on May 24, 2013, and the termination of her employment that followed her refusal to perform the assigned tasks." (Docket No. 50, p. 23.) Where, as here, the plaintiff does not present direct evidence of discrimination, a plaintiff establishes a prima facie case of discriminatory termination by showing the following: "(1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he [was terminated]; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572–73 (6th Cir. 2000). The Aquarium contends that it is entitled to summary judgment on the gender discrimination claim because Sotoj has not presented evidence of the fourth element of her prima facie case. (Docket No. 50, p. 23.) The Court agrees. Sotoj presented no evidence regarding her replacement or any other

26

employees.  Because Sotoj has not made out a prima facie case of gender discrimination, the Aquarium's motion for summary judgment as to this claim is **GRANTED**.

"To establish a prima facie case of pregnancy discrimination, the plaintiff must show that '(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision.'" Prebilich-Holland v. Gaylord Entm't Co., 297 F.3d 438, 442 (6th Cir. 2002) (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000)).  The Aquarium contends that Sotoj has not met the fourth element because she presented no evidence that Wilcher knew she was pregnant.  Sotoj presents evidence that other employees knew she was pregnant.  However, like any other Title VII claim, pregnancy discrimination claims are analyzed under the McDonnell Douglas burden-shifting framework, see id. at 442, and as explained above, Sotoj presents no evidence of pretext.  The Aquarium's motion to dismiss Sotoj's pregnancy discrimination claim is **GRANTED**.

IV.    CONCLUSION

For the reasons stated above, the Aquarium's Motion (Docket No. 48) will be **GRANTED** as to Sotoj's retaliation, gender discrimination, and pregnancy discrimination claims, and **DENIED** as to her sexual harassment claim.

An appropriate order is filed herewith.

_Kevin H. Sharp_
_____
KEVIN H. SHARP, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Case 3:14-cv-00754   Document 70   Filed 07/01/16   Page 27 of 27 PageID #: 506